IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00395–EWN

ALLEN D. CRIDER,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security

    Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a social-security benefits appeal under 42 U.S.C. § 405(g) (2005). Plaintiff Allen D. Crider challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Social Security Disability Insurance ("SSDI") benefits. Jurisdiction is based on 42 U.S.C. § 405(g).

**FACTS**

*1.  Medical Evidence*

Plaintiff was born on September 8, 1964 and was 39 years old on the date of the ALJ's decision. (Admin R. at 50A [filed May 6, 2005] [hereinafter "Admin. R."].) Plaintiff graduated from college and has worked in the vocationally relevant past as a software tester, electronics

tester, substitute teacher, customer support representative, technical lead, media coordinator, security guard, medical courier, medic, sales representative, and teacher.  (*Id.* at 75, 102–03.)  Plaintiff alleges an inability to work beginning June 30, 2001, due to acute chronic pain, severe muscle spasms, migraine headaches, and radiating pain down his arms and legs.  (*Id.* at 69.)

Beginning December 5, 1995, R.M. Vidmar, D.C., evaluated Plaintiff for complaints of back and neck pain, and headaches associated therewith.  (*Id.* at 133.)  On December 13, 1995, Plaintiff underwent a Magnetic Resonance Imaging ("MRI") scan that revealed a central herniation of the nucleus pulposus at C4–C5, a central asymmetric bulging annulus at C5–C6, and a left central asymmetric bulging annulus potentially compromising the left C6 nerve route at C5–C6.  (*Id.* at 208.)

On April 12, 1999, Danny D. Scott, M.D., evaluated Plaintiff.  (*Id.* at 260–62.)  Plaintiff had a negative electromyography exam and his exam was negative for radiculopathy.  (*Id.* at 260.)  Plaintiff's wife occasionally massages him and he receives some benefit from the massage.  (*Id.*)  Dr. Scott noted that Plaintiff uses the computer for several hours a day.  (*Id.* at 261.)  Dr. Scott administered a trigger point injection and Plaintiff's cervical range of motion significantly improved.  (*Id.* at 262.)

On July 19, 1999, Dr. Scott evaluated Plaintiff in a follow-up visit.  (*Id.* at 254.)  Dr. Scott opined that there was no evidence of radiculopathy.  (*Id.*)  Dr. Scott noted that Plaintiff was "managing his pain fairly well," and Dr. Scott administered another trigger point injection which Plaintiff tolerated well without complications.  (*Id.*)

On August 16, 1999, neurologist Kenneth L. Tyler, M.D., evaluated Plaintiff for complaints of tension-type headaches. (*Id.* at 251–53.) Dr. Tyler opined that Plaintiff had mild stenosis of the cervical spine that was not surgically treatable and fibromyalgia of the neck. (*Id.* at 252.) Plaintiff's MRI showed no herniation of the lower back. (*Id.*) Dr. Tyler noted that Plaintiff receives trap injections in his neck every six weeks for pain associated with his ailments. (*Id.*)

On July 21, 2000, Plaintiff underwent surgery for obstructive sleep apnea. (*Id.* at 221.) Following the surgery, Plaintiff reported that he was not doing nasal washes, but he was using warm humidification. (*Id.*) Plaintiff did not have any sinus or facial pain. (*Id.*)

On February 26, 2001, Robert T. Neumann, M.D., Ph.D, evaluated Plaintiff. (*Id.* at 227.) Dr. Neumann reported that Plaintiff had fibromyalgia, brachial neuritis, and tension headaches. (*Id.*) On examination, Plaintiff's neck motion was only minimally limited. (*Id.*)

On May 24, 2001, J. Trevor McNutt, M.D., a neurology resident, evaluated Plaintiff at the Veterans Administration ("VA") hospital. (*Id.* at 224–25.) Plaintiff reported that he had severe back spasms. (*Id.* at 224.) Plaintiff's headaches improved after he added Imitrex to his regimen. (*Id.*) Dr. McNutt noted that Plaintiff appeared "pretty stable" overall. (*Id.*) On examination, Plaintiff did not have any deficits in radicular pattern and he did not have any pain on palpation of neck or low back. (*Id.*)

On July 27, 2001, Amy M. Toth, M.D., evaluated Plaintiff. (*Id.* at 223–24.) Dr. Toth reported that Plaintiff suffers from chronic neck and back pain, cervical stenosis, and gout. (*Id.*) Plaintiff reported that Celebrex worked more efficiently for his pain than ibuprofen. (*Id.* at 223.) Dr. Toth noted that Plaintiff's gout was stable with medication. (*Id.*)

On September 6, 2001, Francis John Keffler, M.D., evaluated Plaintiff at the VA hospital. (*Id.* at 217–19.) Dr. Keffler noted that Plaintiff suffers from gout, neck sprain, brachial neuritis, unspecified migraines, insomnia with sleep apnea, myosotis, cervicalgia, and chronic sinusitis. (*Id.* at 217.) Plaintiff presented to the VA hospital after he fell backward in his chair and landed flat on his back. (*Id.* at 218.) On examination, Plaintiff did not have any cervical tenderness and his X-rays did not show any fractures. (*Id.*) Plaintiff's condition on discharge was good. (*Id.*)

On September 17, 2001, Dr. McNutt evaluated Plaintiff in the neurology clinic. (*Id.* at 216–17.) Plaintiff presented with complaints of increased bilateral lower extremity pain as a result of his recent fall. (*Id.* at 216.) On examination, Plaintiff's neck motion was minimally limited and Plaintiff had no pain on palpation of the neck. (*Id.*) Dr. McNutt prescribed a low dose of Neurontin for chronic pain and dysesthesia. (*Id.* at 217.) Dr. McNutt referred Plaintiff to the surgical team at the VA hospital for an evaluation. (*Id.*)

On November 2, 2001, Plaintiff presented to Patricia Stamper, N.P., a nurse at the VA hospital. (*Id.* at 214.) Plaintiff requested disability forms because he believed he could not work as a science teacher due to severe neck pain. (*Id.*) Plaintiff reported that his migraine headaches improved with Imitrex. (*Id.*) Stamper counseled Plaintiff on salt reduction, weight loss, stress, and exercise. (*Id.* at 215.) Stamper's evaluation of Plaintiff revealed minimal objective findings. (*Id.* at 214–15.) Stamper noted that Plaintiff suffered from chronic migraine headaches, cervical stenosis, and fibromyalgia. (*Id.* at 290.) In a "medical statement" completed on November 2, 2001, Stamper and Allan Procha, M.D., opined that Plaintiff was unable to "obtain and retain

substantially gainful employment" because he was "on narcotics and is in <u>too</u> much pain!" (*Id.* at 290 [emphasis in original].)

On December 19, 2001, Glenn W. Kindt, M.D., evaluated Plaintiff at the VA hospital. (*Id.* at 211–12.) Dr. Kindt noted that Plaintiff was a school teacher who started having neck problems in 1991. (*Id.* at 211.) Plaintiff presented with pain in his low neck, arms, and head. (*Id.*) On examination Plaintiff had fair range of motion in his back, straight leg raising was negative, and restriction of motion in his neck to both flexion and extension. (*Id.* at 211–12.) Dr. Kindt diagnosed Plaintiff with "a narrow cervical spinal canal as well as a bulging disc at C4–5." (*Id.* at 212.) Dr. Kindt opined that it would be "overly aggressive to recommend surgery for [Plaintiff]." (*Id.*) Dr. Kindt recommend that Plaintiff have his MRI repeated. (*Id.*)

On January 14, 2002, Dr. McNutt reported that Plaintiff's tension headaches improved. and Plaintiff was "stable at this point." (*Id.* at 210–11.) In a medical statement issued on January 14, 2002, Dr. McNutt opined that Plaintiff could not work at that point and would need reevaluation "seriously in the future." (*Id.* at 285.)

On February 28, 2002, independent state medical examiner, Thomas Horn Weiss, M.D., evaluated Plaintiff. (*Id.* at 108.) Dr. Weiss determined that "the medical evidence indicates that [Plaintiff] has fibromyalgia, low back and neck pain, gout, and sleep apnea. (*Id.* at 109.) Dr. Weiss noted that Plaintiff "appears comfortable." (*Id.* at 110.) Additionally, on March 4, 2002, a state agency examiner noted that Plaintiff suffered from fibromyalgia. (*Id.* at 129.)

On March 27, 2002, Plaintiff underwent a VA "compensation and pension exam." (*Id.* at 460–66.) On exam Plaintiff did not appear in distress. (*Id.* at 462.) Teresita Marcelo, M.D.,

opined that "[b]ecause of the service connected disabilities, the veteran's employment activities are limited/restricted as follows: [n]o prolonged standing; lifting to a maximum of [twenty] pounds; no repetitive bending; no pushing, no pulling. Sedentary employment may be feasible with frequent changes in position." (*Id.* at 464.)

## *2.     Procedural History*

### *a.     The ALJ's First Decision*

On January 24, 2002, Plaintiff applied for SSDI benefits. (*Id.* at 50A–D.) On March 8, 2002, the Social Security Administration denied his application. (*Id.* at 40–44.) On November 7, 2002, the Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim, at which Plaintiff and a vocational expert testified. (*Id.* at 512–45.) At the November 7, 2002 hearing, Plaintiff testified that he held a bachelor's degree in physics. (*Id.* at 513.) Plaintiff stated that he has two biological children and two stepchildren, ages eighteen, seventeen, sixteen, and fourteen respectively. (*Id.* at 514.) Plaintiff testified that he worked "a quarter of time for the school district" teaching. (*Id.*) Plaintiff testified that he earned "about $750 a month." (*Id.* at 515.)

Plaintiff testified that he had not been hospitalized since he applied for SSDI benefits. (*Id.* at 518.) He stated that he took medications as prescribed to him by his physicians. (*Id.*) Plaintiff said he could only walk a block before he got "shooting pains down [his] inner thighs — inner legs." (*Id.* at 519.) Plaintiff testified that he could: (1) stand for a half an hour; (2) sit anywhere between a half an hour and forty-five minutes; (3) lift twenty pounds; and (4) climb ladders. (*Id.*) Plaintiff stated that he could not bend, crouch, crawl, or twist at the waist. (*Id.*) Plaintiff testified that he experienced pain on a daily basis in the neck and shoulder region. (*Id.* at 520.) Plaintiff

stated that he had problems with memory and could not remember anything he learned in college. (*Id.* at 521–22.) Plaintiff testified that he: (1) was not taking any classes; (2) cooks; (3) did not do dishes; (4) shopped occasionally; (5) did not vacuum; and (6) drove no more than ten miles in a usual day. (*Id.* at 522.)

Deborah Christensen, a vocational expert, testified at the hearing. (*Id.* at 536–42.) The ALJ asked Christensen whether a person with the following hypothetical restrictions could perform Plaintiff's past work:

> [the hypothetical person] could lift [twenty] pounds occasionally from the waist level, [ten] pounds frequently, could stand and walk for six hours and sit for six hours with the opportunity to stand and stretch after an hour and regular breaks. This person needs to avoid concentrated exposure to extreme cold and concentrated exposure to noise — to a noise background.

(*Id.* at 537–38.) Christensen responded that this hypothetical person could perform the positions of software tester, substitute teacher, customer service-or support representative, technical lead, media coordinator, security, medical career, medic, pharmacy clerk, sales representative, and teacher. (*Id.* at 538.)

The ALJ then asked Christensen to consider the same hypothetical with the following additional restrictions: "the person could only lift . . . [ten] pounds from the waist level, [ten] pounds occasionally and frequently. This person also would be limited to . . . understanding, remembering . . . and carrying out simple instructions." (*Id.*) Christensen testified that a person with all of these restrictions would not be able to perform Plaintiff's past relevant work. (*Id.*) Christensen testified that a person with the aforementioned restrictions could perform the following types of work: (1) order clerk, (2) lens inserter, and (3) final assembler. (*Id.* at 539.)

Christensen testified that these jobs exist in significant numbers in the regional and national economies. (*Id.*)

On May 15, 2002, following the hearing, the ALJ issued a decision denying Plaintiff disability insurance benefits. (*Id.* at 472–46.) The ALJ determined Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform his past relevant work. (*Id.* at 475.)

In reaching this conclusion, the ALJ first found that Plaintiff had not performed any substantial gainful activity since the alleged onset date of his disability. (*Id.* at 475.) Next, the ALJ determined that Plaintiff has "severe degenerative disc disease of the cervical spine and lower back strain, with attendant headaches." (*Id.*) It does not appear that the ALJ made a determination at step three. (*Id.* at 472–76.) The ALJ noted that she must determine whether Plaintiff's impairments are "severe enough to meet or equal any of the Listings of Impairments," but, the ALJ did not discharge this responsibility. (*Id.*) Next, the ALJ determined Plaintiff's RFC. In determining Plaintiff's RFC, the ALJ found that Plaintiff was not credible because:

> the balance of the evidence of record does not establish that [Plaintiff] is experiencing pain to the degree he alleges. In particular, the [Plaintiff's] daily activities are consistent with at least the capacity to perform work activity as found in this decision. He was able to drive to the hearing and he is working part-time as a teacher.

(*Id.* at 474.) Based on the evidence presented to her, the ALJ issued her RFC determination. The ALJ concluded that:

> [Plaintiff] retains the [RFC] to sit, stand and/or walk six to eight hours per day; lift, carry, push or pull [twenty] pounds occasionally and [ten] pounds frequently; needs to have the opportunity to stand and stretch after each hour in addition to

>       regular breaks; and must avoid concentrated exposure to extreme cold and
>       background noise.

(*Id.* at 474–75.) In accord with this RFC, the ALJ determined that Plaintiff could perform his past relevant work. (*Id.* at 475.) Thus, the ALJ determined that "based upon a capacity to perform past relevant work, [Plaintiff] is found to be 'not disabled' at all times prior to the date of this decision." (*Id.* at 474.) On October 8, 2003, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (*Id.* at 495–98.) The Appeals Council determined that the ALJ did not consider the opinions of the state agency medical consultants, and those findings "must be treated as expert opinion evidence of non-examining sources at the hearing level." (*Id.* at 496.)

### b.      *The ALJ's Second Decision*

On January 21, 2004, following the Appeals Council decision, the ALJ held a supplemental hearing at which Plaintiff and vocational expert Christensen testified. (*Id.* at 548–76.) At the January 21, 2004 hearing, Plaintiff testified that he was currently enrolled in a graduate program earning a masters degree in space science. (*Id.* at 551.) He stated that he is only taking one three-credit course online because the school offered him free tuition. (*Id.* at 556.) Plaintiff stated that his current source of income was from veterans administration disability benefits. (*Id.* at 552.) He testified that his disability prevents him from working. (*Id.*) Plaintiff testified that he stopped his minimal work at the high school on January 20, 2002. (*Id.* at 552.)

Plaintiff testified that he was hospitalized in the Summer of 2004 for appendicitis. (*Id.* at 553.) Plaintiff stated that he takes morphine, Neurontin, Flexeril, Gabapentin, and Allopurinol.

(*Id.* at 554.)  Plaintiff testified that he can: (1) walk a block; (2) stand forty-five minutes to an hour; (3) sit for up to two hours; (4) lift no more than thirty pounds; (5) bend, crouch, crawl, and twist a "very little;" and (6) climb two flights of stairs.  (*Id.* at 554–55.)  Plaintiff stated that he experiences pain every day in his back, neck, head, arms, and radiating pain down both his legs.  (*Id.* at 556.)  He testified that he has frequent trouble with fatigue.  (*Id.*)

Plaintiff testified that he does not do anything socially.  (*Id.*)  He stated that he: (1) cooks occasionally; (2) does not do dishes; (3) shops occasionally; (4) does not do laundry; (5) does not vacuum; and (6) occasionally drives.  (*Id.* at 556–57.)

Christensen testified at this hearing.  (*Id.* at 571–75.)  The ALJ asked Christensen wether the following hypothetical individual could perform any work:

> a person with [Plaintiff's] age, experience, and education.  If that person could lift [twenty] pounds occasionally and [ten] pounds frequently, could stand and walk for six hours and sit for six hours with a change of position or standing and stretching each hour.  And this person needs to avoid concentrated exposure to extreme cold and to loud background noises.  This person can . . . do climbing occasionally, balancing occasionally, stooping, crouching, and kneeling frequently, no limits on crawling, occasional reaching and handling and fingering, frequent feeling. . . . this person . . . should also avoid concentrated exposure to humidity, extreme heat, fumes, and vibrations.

(*Id.* at 573.)  Christensen responded that such a hypothetical person could work in the position of sales representative.  (*Id.*)  Additionally, Christensen opined that a hypothetical individual "without the limits on the occasional reaching, handling, and fingering" could perform light work.  (*Id.*)

The ALJ issued a decision on March 17, 2004.  (*Id.* at 15–24.)  The ALJ determined Plaintiff was not disabled because he retained RFC to perform his past relevant work.  (*Id.* at 24.)

In reaching this conclusion, this ALJ first found that Plaintiff engaged in substantial gainful employment from August 14, 2002 through January 20, 2003. (*Id.* at 17, 23.) Next, the ALJ determined that Plaintiff has degenerative cervical disc disease with mild stenosis, lumbar strain with a transitional vertebral segment at the lumbosacral junction, tension headaches, and obstructive sleep apnea. (*Id.* at 23.) While these impairments are "severe," the ALJ determined that the impairments do not meet or equal the criteria of any of the established listings. (*Id.*) Next, the ALJ determined Plaintiff's RFC. In determining Plaintiff's RFC, the ALJ found that Plaintiff was not credible because:

> [t]hough . . . [Plaintiff] had significant special consideration in terms of breaks and work duties, that [Plaintiff] worked at gainful levels for a period of [five] continuous months lends little support to his alleged disabling limitations and diminishes the persuasiveness of his testimony. It is again noted that [Plaintiff's] alleged medication side effects are not supported by clinical treatment records. These records consistently show improved headache symptoms, and lack objective signs and findings to support the extent of [Plaintiff's] cervical, lumbar and related upper and lower extremity symptoms. Thus, while [Plaintiff's] subjective symptoms and limitations have been considered, they are not fully supported by other evidence and are not considered fully credible.

(*Id.* at 22.) Based on the evidence presented to him, the ALJ issued his RFC determination. The ALJ concluded that:

> despite his physical impairments, [Plaintiff] retains a [RFC] to lift and carry [twenty] pounds occasionally and [ten] pounds frequently. He could sit, stand and walk for [six] hours in an [eight]-hour day, each. [Plaintiff] could occasionally climb and balance, and could frequently stoop, kneel, crouch[,] and crawl. [Plaintiff] should avoid concentrated exposure to temperature extremes and background noise. He is without further restriction.

(*Id.* at 22–23.)  In accord with this RFC, the ALJ determined that Plaintiff was not disabled because "he retains the [RFC] to perform the actual functional demands and job duties of a particular past relevant job."  (*Id.* at 23.)

Plaintiff appealed this decision, and on February 3, 2005, the Appeals Council declined to review the ALJ's determination.  (*Id.* at 5–9.)  Thus, the ALJ's decision became the Commissioner's final decision for the purposes of the present appeal.  Plaintiff filed a complaint in this court on March 2, 2005, challenging the Commissioner's denial of disability insurance benefits.  (Compl. [filed Mar. 2, 2005].)

## ANALYSIS

### *1.   Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2004) (incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C.A. § 405(g).  Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*; *Hamilton v.*

*Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). The court must uphold the Commissioner's decision if it is supported by substantial evidence. *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987). This court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ. *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987). That does not mean, however, that my review is merely cursory. To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

### 2. *Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In proving his disability, a plaintiff must make a *prima facie* showing that he is unable to return to prior work he has performed. *Huston*

*v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey,* 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis); 20 C.F.R. § 404.1520 (2004). A claimant may be declared disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams,* 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. *Id.*; 20 C.F.R. § 404.1520(e). This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the

>ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). The fifth step requires the Commissioner to demonstrate that the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and there is availability of that type of work in the national economy. *See Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

### 3. *Disability Determination*

Plaintiff asserts that the ALJ committed five errors in her disability determination. First, Plaintiff contends that the ALJ erred in evaluating his treating physician's disability assessments. (Pl.'s Opening Br. at 17–20 [filed July 13, 2005] [hereinafter "Pl.'s Br."].) Second, Plaintiff asserts that the ALJ's findings at step two are not supported by substantial evidence. (*Id.* at 20–22.) Third, Plaintiff alleges that his spinal disorders may meet or equal the listing at step three of the sequential evaluation. (*Id.* at 22–28.) Fourth, Plaintiff contends that "[t]reating doctors' opinions are well supported and not inconsistent but were not properly evaluated by the [ALJ]." (*Id.* at 29–32.) Fifth, Plaintiff asserts that "the ALJ's [RFC] assessment for past relevant work is not supported by substantial evidence at step four." (*Id.* at 32–39.) Finally, Plaintiff contends that the vocational expert's testimony regarding Plaintiff's ability to return to his past relevant work "is not substantial evidence." (*Id.* at 39.) I need only evaluate Plaintiff's second allegation – that the ALJ's findings at step two are not supported by substantial evidence — as that determination directly effects the remaining portions of the ALJ's decision.

Plaintiff contends that "the ALJ did not account for Plaintiff's fibromyalgia at step two" and "this is inconsistent with the medical and other evidence of record." (Pl.'s Br. at 20–21.) At step two, the ALJ is to determine whether Plaintiff has an "impairment or combination of impairments which significantly limits [his] . . . ability to do basic work activities." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). This determination is governed by the Secreatary's severity regulations. *See* 20 C.F.R. §§ 404.1521(b) (2006) and 416.921(b) (2006).

Specifically, basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The ALJ's determination at step two is based on medical factors alone, and does not include consideration of age, education, work, and experience. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Plaintiff must only make a threshold showing that "his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activity." *Id.* The Tenth Circuit has said that step two "requires a 'de minimis' showing of impairment." *Hinkle*, 132 F.3d at 1352 (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1169 [10th Cir. 1997]). Despite this low threshold, Plaintiff must show more than the mere presence of a condition or ailment. *Id.*

Here, the ALJ did not discuss Plaintiff's fibromyalgia at step two of the sequential evaluation. The evidence in the record supports the fact that multiple treating and evaluating physicians have diagnosed Plaintiff with fibromyalgia and determined that this impairment

significantly limits Plaintiff's ability to do basic work activities. *See Preston v. Sec'y of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir. 1998) (noting that the ALJ properly considered fibromyalgia as a severe impairment at step two). Specifically, Dr. Tyler noted that Plaintiff suffers from fibromyalgia of his neck and gets trap injections in his neck every six weeks. (Admin. R. at 252.) Additionally, Dr. Neuman opined that Plaintiff suffers from fibromyalgia and migraine headaches associated therewith. (*Id.* at 227.) Further, Stamper and Dr. Procha opined that Plaintiff suffers from fibromyalgia and cervical stenosis and was unable to "obtain and retain substantial gainful employment" because he was in too much pain. (*Id.* at 290.) Finally, the state agency medical examiners noted Plaintiff suffered from fibromyalgia (*Id.* at 108–10, 129, 215). Thus, the ALJ had an obligation to evaluate Plaintiff's fibromyalgia at step two of the sequential evaluation. *See Hinkle*, 132 F.3d at 1352.

Indeed, the ALJ's failure to discuss or mention Plaintiff's fibromyalgia is perplexing in light of the fact that the ALJ considered Plaintiff's fibromyalgia in her initial decision on this matter. (*Id.* at 472.) Moreover, Dr. Procha's opinion — that Plaintiff was unable to work due to pain associated with migraines, cervical stenosis, and fibromyalgia — formed the basis of the Appeals Council's initial remand of this matter. (*See id.* at 495–98.) As stated above, the Appeals Council remanded the case to the ALJ with instructions to consider the "expert opinion of non-examining sources." (*Id.* at 496.) In light of this instruction, the ALJ's subsequent omission of Plaintiff's fibromyalgia is erroneous. For the reasons stated above, the ALJ's decision at step two of the sequential evaluation is not supported by substantial evidence in the record.

Defendant contends that "[e]ven assuming Plaintiff's fibromyalgia was severe, the ALJ's decision remained supported by substantial evidence because . . . the ALJ properly [sic] Plaintiff's subjective complaints considered together without distinguishing between specific impairments." (Def.'s Resp. Br. at 14 [filed July 29, 2005] [hereinafter "Def.'s Resp."].) Defendant essentially argues that the ALJ's omission was harmless error. (*Id.*) While the Tenth Circuit generally recognizes the harmless error principal in social security disability cases, this is not the case where "a harmless error determination rests on legal or evidentiary matters not considered by the ALJ." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Here, the ALJ did not address Plaintiff's fibromyalgia. Thus, the ALJ could not have considered the pain associated therewith. Further, the ALJ's failure to consider Plaintiff's fibromyalgia at step two could impact the ALJ's RFC determination on remand. Plaintiff's fibromyalgia in combination with his other impairments could significantly limit Plaintiff's RFC to perform his past relevant work. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that some people may have such a severe case of fibromyalgia as to be totally disabled from working, however, there are not objective clinical tests to determine the severity of the condition); *see also Preston*, 854 F.2d at 819–20 (discussing the potentially debilitating nature of fibromyalgia and recognizing the difficulty in diagnosing the disorder); *see also Manley v. Barnhart*, 154 Fed. Appx. 532, 536 (7th Cir. 2005) (cautioning courts that claims of disability based on "amorphous pain disorders such as fibromyalgia" are difficult to diagnose). Thus, the ALJ had an obligation to consider the evidence relating to Plaintiff's fibromyalgia at step two of the sequential evaluation.

*4.     Conclusions*

Based on the foregoing it is therefore

ORDERED that the Commissioner's decision is REVERSED and REMANDED.

Dated this 14th day of March, 2006.

                                        BY THE COURT:

                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        United States District Judge